And we'll turn to the day calendar. We've been informed by the clerk that counsel in each case have signed in, so we'll dispense with the calling of the calendar and we'll hear Jennifer Fung-Schwartz, MD v. Cerner Corporation et al. Go ahead ma'am. Go ahead. May it please the court. My name is Elizabeth Shieldcret. I represent the appellants and I'm asking this court to set a precedent to protect patients' rights, in particular to protect patients and to enter a proper injunction to protect patients from interference by a medical service provider that has a mere allegation that they're owed money. What's the relief you're seeking? We're seeking a proper injunction which would make the Cerner maintain the records through the accessibility to the medical record system through the determination of the case. Can you make it clear to us whether you did or did not get that relief from the district court? We did not get a proper injunction. The district court nominally denied the injunction. At the same time, the district court instructed Cerner not to turn the system off and to keep it on. So he orally granted what you wanted but in writing denied it. Is that it? Yes, your honor. Did you go back to him to clarify that apparent inconsistency? He did it first on the record in court and then issued a written order confirming what he said. No, no, no. After you got the oral grant of an injunction and the written denial which seemed to create an inconsistency, did you go back to the district judge and say, Judge, which is it? No, your honor. Why not? Partly because we were so desperately in need of that relief to keep the injunctive relief in place. All the more reason to go to him quickly and say, are you giving it to us or not? You didn't do it? No, your honor. Would it be useful now for us to remand it to the district court so he could tell us and you whether he is denying the temporary injunction? I think that the record is developed. He had a full briefing before him. We asked for a hearing that he did not grant and he said he did not want to hear. Yes, because orally he gave you what you wanted. You didn't need a hearing to do it. You'd won. All you had to do was ask him to help you celebrate your victory. What we asked, what we wanted and we had asked in the papers was a proper order under Rule 65 because in this case there were third party service providers that provide, for example, the prescription writing feature of the medical record software and we need an order that's binding under Rule 65 on those third parties. And it's not clear, I mean the court also did not make the requisite findings to support the order when he told, he called it an instruction when he told Cerner to keep the records on, that he didn't make the findings, for example, of irreparable harm, likelihood of success on the merits, balance of the hardships and the public interest. The judge made none of those findings in the written opinion that followed. Am I right that the only showing in the record of the likelihood of irreparable harm was a five day interference in October 2016 with service that was then rectified and a brief interruption in January of 2017, which is now well over a year and a half ago and going on more. Is there anything further in the record? What prompted the motion, the interruption in October 2016 started the case and we had a hearing on a TRO at which point Cerner agreed to keep the service on for a ten day period and then they never entered into an agreement or any kind of consent order to keep the service on during the rest of the case. What prompted us to move for the preliminary injunction was they would not reach an agreement with us to keep the service on for the rest of the case and they were moving in the district court to dismiss any injunctive relief in the case. They were trying to change the status quo. That's what prompted this motion. There's nothing more than that. Where do things stand with regard to the contract dispute? The underlying lawsuit, the second lawsuit that was served on the defendants is still pending? And you're seeking damages? Are you still using them as a service provider for billing and prescriptions and medical records management and so on? We have not been using them as a service provider for billing. We have not been able to move to another service provider for the medical records. Ms. Shields, I'm looking at this very short two page order by Judge Broderick. On page A174, he, as you suggest, expressly finds that your application does not meet the relevant standards for preliminary injunctive relief. And then he says the motion for a temporary restraining order and preliminary injunction is denied. That much is not disputed, right? I mean, nothing's changed that order. Correct, Your Honor. In the following paragraph, Judge Broderick sets out a scheduling order with respect to arguable or possible motions to dismiss. Has that scheduling order been complied with by the parties? Yes, Your Honor. The motion has been fully briefed and not yet decided by the district court. So that dispositive motion, so-called, is now before Judge Broderick? Yes, Your Honor. Now help me to understand your case a little bit, to understand in what sense this order by Judge Broderick, dated August 8, 2017, is inconsistent with anything else in the record that you think would have led you to believe that you had achieved your objective. Can you show me? I have before me the transcript of the August 4, 2017, hearing before Judge Broderick. You were present, and I think Mr. Fanning was present, and it's about 20 pages or so. Where here do you derive the idea that you were provided with injunctive relief? We were not provided with injunctive relief pursuant to Rule 65, Your Honor. There's nothing in there where he says it's denied. Are you sure of that? He does not... Take a look at A69, 169 to 70. As I said, at least during the pendency of the motion to dismiss, the system should remain on. Isn't that what you wanted? There's... And that's why I said... Is that what you wanted? We wanted a ruling consistent with Rule 65 that the system should remain on. You want the system to remain on. Yes, that's the relief we wanted. That is the relief you wanted. We didn't get... We're on page 169. Bottom of A169. And top of A170. Same as he said at the top of 168. So why isn't that enough? May I respond, Your Honor? It's true, absolutely. As I said, it doesn't... The ruling is not supported by the findings required under Rule 65 to enter a preliminary injunction. Why should you care about that? You're talking about the denial now. Right. I'm saying what the judge said on the... Keep in mind that the grant isn't supported. It's the denial that isn't supported, right? What we need is a proper ruling under Rule 65 that's applicable to non-parties, that's applicable to parties working in concert with Cerner so that they don't get the idea that the system can be turned off even if Cerner wants to pursue their collection activities. Communications with third parties? What you're concerned about is the robotic incantation about... In Rule 65, I guess it is, that provides that persons acting in concert with the defendant also can't do certain things, right? Right. We... Why isn't that kind of... Why isn't that obvious? What have you done to make sure that they are aware of the existence of this, what looks like a temporary restraining order? We don't know who all the business partners are or what parts of the software they control. There are some providers that we have an idea who they are, but we have not had discovery yet, and we have not been able to... How many months have passed from this hearing? It seems to me that Judge Newman's original questions were quite direct and, I think, appropriate. Why don't you just go back to Judge Broderick and say you have exactly what you're telling us here, that you're seeking clarification, or that you have an order and you think there's some confusion created by the August 8th order, and ask him to give you a definitive ruling of the sort that you seem to be interested in? What's the impediment? I think, being at the hearing, Judge Broderick said he didn't want to enter the injunction, he didn't want to hear any more about it, he didn't want to hold a hearing on it, and then he issued that order. We asked... Has there been any interference at all since January of 2017? No, Your Honor. There has not been an interruption, but Cerner has said, and they've said in this briefing before this Court as well, that they have the right to turn the system off again, and that they still believe that they can. All right. We'll hear from opposing counsel, who was there, and he can perhaps enlighten us, and then we'll hear further from you. You have reserved three minutes. Thank you, Your Honor. May it please the Court. Judge Broderick found no reparable harm. He did find that in the record. There is no actual imminent threat, there is no threatened injury, there is no continuing harm, which are all requirements for issuance. Do you understand that he said he's going to continue, he's going to keep you from turning it off during the lawsuit? What I understand is Judge Broderick indicated that we were not to turn it off during the pendency of the motion to dismiss, which he ordered be filed. Well, at one point he said motion to dismiss, at one point he said the case, during the pendency of the case. That's on A-164, didn't he? He said that. He did, and then he corrected himself on, I believe that's A-169, although I do not have it right in front of me. Do you think that's a correction, or he just said it differently on two occasions? No, there was a lengthy discussion in that time period about what type of case it was, and why couldn't Dr. Fung-Schwartz go to an alternative service provider? No, no, no, but did he mean keeping you, keeping the system on pending the motion to dismiss, or pending the case? My takeaway from the transcript is that his ultimate conclusion was don't turn it off during the pendency of the motion to dismiss. He said that at one point. At another point, he said pending the case, so that if he denies the motion to dismiss, do you understand you are barred by his oral ruling, at least, during the pendency of the case? Your Honor, I'm going to go to Judge Broderick if we lose the motion to dismiss and get clarification. I would never, my client would never suppose to turn off a solution in the midst of a federal lawsuit in the Southern District of New York with a federal judge who's issued an order, whether clear or not, as to what we should do. You're in favor of getting clarification. I'm in favor of us not turning anything off until we get clarification, but that does not, in my opinion, mean there is a de facto preliminary injunction right now. It means we need to tread carefully. We don't want to risk contempt. We don't want to do anything that would be... What is it that you think you can do? I'm putting your adversary's words in your mouth, but what is it that you think she's worried about your doing or people acting in concert with you? I don't want to speak out of turn. I think what we're in the midst of here is... Can I ask you a question? We're in year two plus of her client not paying her bill, and she has her electronic medical record solution, and she's using it free of charge. We've offered alternatives, the court has offered alternatives, including creating an escrow account. No one has ever placed a client in a situation where it is going to have an inability to get its medical records, and whatever happened in October of 2016 is an issue that will be addressed in the district court. However, what we must do is we must have the right to get a business divorce, as the contract would allow us, and to get the electronic medical records moved to that next provider. We currently have Dr. Fung-Schwartz, respectfully, as a squatter. She will not go get those records into another provider, and we can't force her to do that. Is the contract kind of incorporated into the discussion on your motion to dismiss by virtue of reference to the contractual relationship to the parties? Well... The contract between you, because I'm interested in hearing about what the contractual remedies are, because obviously this kind of contract does have implications for patients, and not just Dr. Fung-Schwartz, and denying people access to their medical records, pending a contract dispute, and presumably Dr. Fung-Schwartz has perhaps objections to how the service was provided, or to other elements. I mean, you have a dispute going on. You know, what happens to the patients in the meantime, so I'm curious to know what those are properly in the record. That is a good question. Of the 18 counts that currently exist in the amended complaint, 17 of them are non-breach of contract related. So we've moved to dismiss those 17. The contract action would remain in the case. With respect to transition of medical records, what would occur is patients always have access. Dr. Fung-Schwartz was supposed to have read-only access during that interrupted period in October, which would allow... She was supposed to have what kind of access? Read-only, which would mean that she could read records, and she could determine what needed to be done. Now, whether that was done effectively or not is a question for the lower court that we're dealing with. But we always provide clients, upon termination, normally the way it's done is it goes to the next provider. So we coordinate with the next provider, and we get them those electronic medical records uploaded, so that then they can have a, hopefully, seamless transition. However, in a situation where there is a situation like this, we would have to provide someone with read-only access, unless and until they decide to transition. But there's never an attempt to take away someone's right to access patients' records. And there's certainly no imminent threat of that, however we interpret Judge Broderick's ruling. So that's where we see things. But in October of 2016, all access was stopped for five days. Isn't that right? I'm not certain that timeline is exactly accurate. I think what happened was that she couldn't get into her system. Her login was disrupted for a reason. Upon receiving information on my side, obviously, we got that corrected quickly. We had a hearing with Judge Broderick after Ms. Shieldcret and I were in the process of working through these issues. She had access again at that point. Then there were some issues with respect to e-prescribing, which, again, the New York statute allows a physician to use non-electronic medical record solutions if there is a downtime or an interruption. So there are accounted for procedures in the law to deal with this. But obviously, electronic medical records, they belong to the patient. And those are always transitioned, to the extent possible, to that next provider. In this instance, she has indicated in that court hearing on August 4, she won't go get them transitioned. She says it's complex. It takes time. She can't do it. But we're in year two and a half of her not paying, year three of her not paying. And while that is not a reason for us to terminate her access, it is a reason for her to move on. We have two contracts. There's one she has no beef with, and that's the one she's not paying. There's another one she has a beef with. And certainly, we can debate that and we can litigate it down in the district court. But as far as the imminent threat issue goes, there is no imminent irreparable harm. At any stage right now in this litigation. And that's what Judge Broderick found. And I guess she would say that you have not denied that you would, that you have the right to cease access, to cut off her access. Is that correct? I would say... My understanding, is that correct? That you haven't denied that you would? I haven't denied that we would seek to terminate the contract. And I think that's where the discrepancy in the relationship is here. Another one of the discrepancies in the relationship. We want to terminate the contract. We want out. We won't cut off her patient record access. And that is not by any stretch, whether Judge Broderick would have said so or not, that's not going to happen. But the simple fact is, is the question of whether she has a right to continue to interact, as opposed to simply read the records. That's where there's a discrepancy. Can someone always have a right to use our solutions without paying for them and interact with them, versus making sure there's an opportunity for them to see all the electronic medical records. And that's where the discrepancy is here. Let me come at the same question in still a slightly different way. Are you able to represent to us on the record that you will maintain whatever current access Fung-Schwartz has to her electronic medical records while the litigation remains pending? No. I will represent that we will allow her to maintain the continued access that she currently has until we obtain an order from Judge Broderick allowing us to do something otherwise. That's what I said. I thought I had said that you will maintain whatever current access Fung-Schwartz has to her electronic medical records. My only clarification was with the second phrase, while the litigation remains pending, we would reserve the right to go to Judge Broderick and ask him for an order allowing us to get out. OK, and that's what we meant. That's what I mentioned on the record on August 4th, 2017. Judge Broderick, I might be coming back to you. We want out. But that part of it, yes, I would agree. We won't do it until he does anything. You say want out. You mean end the lawsuit? Well, I always want to end the lawsuit. That's what I understand. So if your representation is you won't deny her access to the records pending the lawsuit, and if you are right and you ask the judge to dismiss the lawsuit and you get that dismissed, then you're out from under whatever his order is. Your Honor, 17 of the 18 counts we moved to dismiss. The breach of contract count that Dr. Fung-Schwartz filed would remain in the lawsuit. We'd remain in pending litigation. And so I don't mean to quibble. You want to cut her off during the litigation of that one claim? We don't want to cut her off until she's transitioned to another provider. We, we, what I'm suggesting is if the lawsuit is pending and we have given her ample time, we will give you your records. Here they are, however you want them. Okay. And we're still in this breach of contract action, which could go on for two or three more years. I would then go to Judge Broderick and ask Judge Broderick for an order allowing us to do it. We're not going to make any move without getting the court's opinion on it while the litigation remains pending. And all you have right now, though, all she has right now, though, is read-only access. No, she has full access. Full access. It was restored in October of 2016. And to the extent there's an issue with respect to January of 2017, I believe it's understood that that was not a Cerner-related issue. In fact, it was just some outage. So she has had full interactive access since October of 2016. And what you would have us do is simply enter an order affirming the August 8, 2017 order of Judge Broderick. Yes, Your Honor. That's what you want. Yes, Your Honor. All right. If we do that, if we treat this as a denial and affirm it, does anything prevent you from going to her and saying, you've got two weeks to pick another provider. And if you do that, we will, of course, give access to the new provider, but we're not going to give access to you unless you transition to a new provider. Would you be able to do that? Not consistent with if we were still following the district court's standing order, which is not a preliminary injunction, but simply a directive to us, and we wouldn't violate a court order. So you are able to represent to us, regardless of what the judge said, that if we treat this as a denial of the preliminary injunction and affirm the denial, you will not cut off her access to any patient's records at least until the motion to dismiss is ruled on. Is that right? Yes, Your Honor. Okay. All right. Thank you. All right, you've reserved three minutes. I'd like to start off by addressing- Why isn't that enough, the representations that have been made here in open court? Cerner's position has been changing, apparently, and- Forget whether it's changed. You know what his position is today in response to the questions by the several members of the panel. Right. So we're hoping we'll win the motion to dismiss. That means those claims are still in, but he believes that they can now try to get interim relief changed. The other issue- What does that mean? What I'm saying is, I think Mr. Fanning answered based on a belief that the claims would be dismissed in the motion to dismiss, and therefore, this wouldn't be an issue anymore. And that's just not true. Even if the contract claim is the only claim, this is still an issue. She has a contract for them to provide service for 2019. If that were to happen, you and he would then be in a position to ask Judge Broderick to clarify whatever concerns you then have on his next order. So how does that affect the question of whether we ought to affirm the August 8, 2017 order? So you've just heard him say what he said in response to Judge Newman's question. If we affirm that order, they're not going to move her out, as they say. Right? Until the disposition of the motion to dismiss. At that time, you can make all of this available to Judge Broderick. Tell him the situation in the Court of Appeals, what the representations were. That's why transcripts were created. And then you can pursue whatever remaining concerns you have. But it seems to me your concerns are very theological with respect to the character of the orders. Is a standstill order of some kind? That's another phrase, one of these ambiguous phrases. A standstill order. And an opposing counsel clearly understands it. Right. What they're looking for is to then re-litigate it. So what we have to go back and do is what we've now done twice, which is brief up likelihood of success, irreparable harm, public interest, and balance of the hardships. What he's saying is we have to go for another injunction. He didn't say that. Maybe he did. I may have missed that. What he's and you should be waiting for is the decision of Judge Broderick on the motion to dismiss. Right? At which point you will know what the situation is. There'll still be the contract claim with the contract that says she is getting the service through 2019. And what he's really asking for and what Cerner's really asking you to do is mandatory injunctive relief. He's asking to change the status quo from keeping the system on. The only burden to them is something that can easily be compensated with money. The record shows service costs $640 a month. It can easily be compensated with money. And instead, what he's saying is she should now go and transition to another service, even though she has this contract. Even though all the records for the last ten years are in there. And even though it's very burdensome for her and patients when she does that. We're saying there's nothing to support mandatory injunctive relief for the defendant in this case. They haven't even answered. There is no claim for contract relief for them. The only contract claim in this action is Dr. Fung-Schwartz's claim that Cerner owes them her in the practice money. Do they not have the right under the contract to terminate? They do not have the right to cut off the service without a transition period. They do have the right to terminate. They're not enslaved. They cannot just cut off service. They can say that the contract is terminated. But they cannot just cut off service. And that's what he held. He won't do that pending the motion to dismiss, being ruled on. But what he's- That's what you want. And you got it. What I want is preliminary injunction relief lasting through the end of the case, not just the decision on the motion to dismiss. That's an ambiguity that we've discussed here between two different statements made during the hearing before Judge Broderick, and which can be fully discussed and clarified by Judge Broderick upon your request when he is either before he decides the motion to dismiss or immediately afterwards. Well, thank you both very much. We appreciate it. Thank you. We reserve the decision.